IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


**RONNIECE ADKINS, ET AL**                                                         **PLAINTIFFS**

**v.**                                                                                                 **NO.: CV – 1:08CV257-M-D**

**FOUNTAINBLEAU MANAGEMENT SERVICES, LLC and**
**RONALD VON KURNATOWSKI, JR., and**
**SHARIAH GATES**                                                          **DEFENDANTS**


## ORDER

This cause comes before the court on the motion of defendants Fountainbleau Management Services, LLC ("FMS"), Ronald von Kurnatowski, Jr. and Shariah Gates, to Sever Improperly Joined Parties, Or Alternatively, to Order Separate Discovery and Trials. The court concludes that, while defendants' motion appears to be well taken, there also exist concerns regarding the jurisdictional basis for this case and that plaintiffs should be required to show cause why this case should not be dismissed without prejudice.

This is a mass-joined action filed by close to fifty residents of the Evergreen Square Apartments in Tupelo, alleging violations of state and federal law based upon defendants' failure to properly maintain and operate their apartment complex. Specifically, plaintiffs allege as follows in their complaint:

> 6. In August 2001, Defendant Von Kurnatowski, through his company, Defendant Fountainbleau, purchased Evergreen Square Apartments, located at 924 Lawndale Drive in Tupelo, Mississippi. The apartment complex was approximately 30 years old at that time and needed upgrades and repairs to many of its 257 apartments.
>
> 7. Since the purchase, Defendants claim to have been working to "turn the property around and put them back in commerce at a minimal costs to tenants"

> and that they have "pumped money and manpower into the property to make it a clean, safe and affordable place to live"
>
> 8. General conditions at Evergreen Square, however, have continued to deteriorate. It has one of the highest rates of serious crime of any housing development in Tupelo, with 37 felony crimes reported on the property in twelve month period immediately prior to the filing of this Complaint.
>
> 9. Apartment conditions have likewise continued to get worse. As of mid-summer of 2008, only 162 of the 257 apartments at Evergreen Square were habitable according to the Tupelo Department of Planning and Development, which is responsible for inspecting and issuing certificates of occupancy for rental dwellings in Tupelo. The remaining units could not pass city inspection.
>
> 10. Residents have lodged numerous complaints with city officials and Fountainbleau managers about the conditions at Evergreen Square. Among the problems reported have been leaks, backed up sewers that repeatedly spewed feces and other human waste into apartments, air conditioning and heating failures, water seeping under walls and into carpets, and insect infestations.

From reading the complaint in this case, it is apparent that it alleges conduct on the part of defendants which is disturbing. At the same time, the complaint fails to even come close to meeting the pleading standards which apply in federal court, particularly in light of the U.S. Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and Bell *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). In their motion, defendants raise valid questions regarding the complaint's failure to allege proper joinder under Rule 20. Indeed, the complaint fails to allege that the plaintiffs' claims arose out of the same transaction and occurrence, or series of transactions and occurrences, as required by Rule 20. Moreover, as a practical matter, it seems highly doubtful that the claims of almost fifty plaintiffs, many of whom live in different apartments and all of

whom have their own unique alleged damages, could be tried in a coherent manner at trial. The court therefore concludes that defendants' objections to the joinder of the plaintiffs in this case are well founded.

The court also notes, however, the highly suspect allegations in the complaint regarding the crucial issue of jurisdiction, which concerns this court is obliged to raise on its own motion if necessary. In support of plaintiffs' assertion that federal question jurisdiction exists in this case, the amended complaint alleges violations of the First and Fourteenth Amendments and 42 U.S.C. § 1983, even though the only defendants in this case are private defendants. With regard to their First/Fourteenth Amendment claims, plaintiffs allege as follows:

> 43. The Fourteenth Amendment of the United States Constitution prohibits the states from penalizing an individual for the exercise of a constitutional right.
>
> 44. Judicial action in a private dispute is the sort of state action required for the application of the Fourteenth Amendment.
>
> 45. The Plaintiffs have the right, pursuant to the First Amendment of the United States Constitution's guarantee of the right to free speech, to report violations of the law or communicate with the press.
>
> 46. The Defendants have utilized the judicial eviction process of the courts of the State of Mississippi to wrongfully evict Plaintiffs for the overriding reason of retaliating against those Plaintiffs' exercise of their first amendment right to free speech.
>
> 47. As a result of the violation of their First Amendment rights, as made applicable to the states by the Fourteenth Amendment, Plaintiffs are entitled to injunctive relief in the form of an order prohibiting Defendants from engaging in such violations in the future. Plaintiffs are also entitled to actual damages, punitive damages and an award for the costs of bringing this action.

Plaintiffs similarly allege, in support of their § 1983 claims, that:

> 49. Evergreen Square is a federally-subsidized housing development that accepts each month Section 8 monies from the Tennessee Valley Residential Housing

>    Authority.
>
>    50. Defendants have utilized the judicial eviction process of the courts of the State of Mississippi to wrongfully evict or attempt to evict Plaintiffs who have exercised their constitutional rights to complain to city officials and reporters about the conditions at Evergreen Square.
>
>    51. Retaliatory evictions under the color of state law are actionable under 42 U.S.C. §1983.
>
>    52. The state action required to find an act to be "under the color of state law" is present where, as here, Defendants used the state courts to evict or attempt to evict tenants in retaliation for the exercise by those tenants of their constitutionally guaranteed rights.

The complaint thus makes the rather extraordinary allegation that private defendants may be held liable for violations of the First and Fourteenth Amendments and/or § 1983 merely because they utilized the judicial process, in the form of eviction proceedings. Unsurprisingly, no authority is cited in support of this argument, which is almost certainly incorrect.

Section 1983 provides a cause of action against any person who, under color of state law, deprives another of rights secured by the Constitution. *Collins v. City of Harker Heights*, 503 U.S. 115, ----, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); 42 U.S.C. § 1983. In *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744 (1982), the Supreme Court held that private parties invoking a state attachment statute may be held liable under § 1983 if their actions are "fairly attributable to the state." *Id.* at 936, 102 S.Ct. at 2753. The Supreme Court in *Lugar* established a two-part test for determining whether the conduct alleged meets this requirement. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* Second, "the party charged with the deprivation must be a person who may

4

fairly be said to be a state actor," that is, one who is in fact a state official, one who "has acted with or has obtained significant aid from state officials," or one whose "conduct is otherwise chargeable to the State." *Id.* at 923, 102 S.Ct. at 2754.[1]

It seems highly doubtful to this court that a private apartment complex which is not alleged to have any connection with the state (other than receiving federal funding) could ever be held liable under § 1983 merely because it utilized eviction proceedings. Indeed, it is doubtful that federal question jurisdiction could arise in the manner argued by plaintiffs, lest eviction proceedings throughout the United States give rise to federal question jurisdiction, in a variety of contexts. While the court can not rule out the possibility that plaintiffs will be able to properly allege federal claims in a new complaint, this case is appropriately regarded as a state law-based landlord-tenant action (albeit a very serious one) which does not implicate federal jurisdiction. The court agrees with the joinder arguments raised by defendants in their motion, and these constitute additional reasons to dismiss this case. This court is required to address jurisdictional issues as a threshold matter, however, and the complaint in this case plainly fails to set forth facts or arguments that might support a conclusion that federal jurisdiction exists in this case.

Plaintiffs also allege in their complaint that diversity jurisdiction exists in this case, and

---

[1] In *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), the Supreme Court wrote that "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Id.* at 295, 121 S.Ct. 924 (*quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). Some of the factors to consider in determining whether there is a "close nexus" are: (1) the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor. *See id. at* 295-99, 121 S.Ct. 924.

there does appear to be diversity of citizenship between the Mississippi resident plaintiffs and two of the Louisiana resident defendants: FMS and von Kurnatowski. The amended complaint notably fails to assert, however, the domicile of the third defendant in this case, Shariah Gates. The reason for this omission appears to be that Ms. Gates is a diversity-destroying Mississippi resident. Ms. Gates is described in the complaint as the "on-site manager" at the Tupelo complex, and it certainly seems reasonable to conclude that she is a Mississippi resident and that diversity of citizenship is lacking in this case. The court would also note that the complaint is fatally defective in that it fails to allege that the individual claims of any one plaintiff exceed the $75,000 jurisdictional threshold, as required by the U.S. Supreme Court's decision in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S. Ct. 2611 (2005).

While plaintiffs do allege misconduct on the part of defendants which is disturbing, such allegations do not serve to lower the jurisdictional, pleading and joinder requirements which apply in federal court. The amended complaint in this case falls far short of meeting these requirements, and it therefore appears that this case is due to be dismissed. Given that the court is raising many of these issues on its own motion, however, plaintiffs will be given ten days from the entry of this order to show cause why this case should not be dismissed. Pending the court's final ruling on this issue, this case is stayed.

SO ORDERED, this the 3rd day of March, 2010.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**